**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **DEDRA JACKSON,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:15-CV-3125-L |
| | § | |
| **SUPERIOR HEALTHPLAN, INC., and** | § | |
| **CENTENE COMPANY OF TEXAS LP,** | § | |
| | § | |
| Defendants. | § | Referred to U.S. Magistrate Judge |

## MEMORANDUM OPINION AND ORDER

By order of reference dated May 4, 2016, this case has been referred for full case management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions (doc. 31). Before the Court is the plaintiff's *Motion for Notice to Potential Plaintiffs and Conditional Certification*, filed April 29, 2016 (doc. 30). Based on the relevant filings and applicable law, the motion is **GRANTED.**

### I. BACKGROUND

On September 25, 2015, Dedra Jackson (Plaintiff) brought this collective action under the Fair Labor Standards Act (FLSA) to recover unpaid overtime compensation against her former employers, Superior Healthplan, Inc. and Centene Company of Texas, L.P.[1] (Defendants). (doc. 1 at 2-4.)[2] She alleges that she routinely worked over 40 hours per week for Defendants in the position of Field Service Coordinator but was not paid overtime wages and was misclassified as an

---

[1] Both Superior Healthplan, Inc. and Centene Company of Texas, L.P. are subsidiaries of Centene Corporation, a "multi-line healthcare enterprise that provides programs and related services to a number of under-insured and uninsured individuals." (doc. 1 at 2.)

[2] Citations refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

"exempt" employee. (doc. 1 at 4.) Thirteen other individuals have opted-in to this action and allege that they are "similarly situated" to Plaintiff.[3] (docs. 3, 8, 9, 21, 27, 37, 44, 45, 46, 47.)

Plaintiff moves for conditional certification of a collective action comprised of "all current and former Field Service Coordinators (who were categorized, known, or identified specifically as 'Level 2,' 'Level II,' 'LPN,' 'LVN,' [or] 'LCSW' Field Service Coordinators) who worked for Defendants in the state of Texas from April 2013 to the present and were paid primarily on a salaried basis." (doc. 30 at 4-5.)[4] She provides job descriptions that classify Level 2 Service Coordinators as exempt under the FLSA, and declarations from opt-in plaintiffs attesting to similarities in job duties for Level 2 Field Service Coordinators at each of Defendants' locations. (*See* doc. 30.) They aver that their primary job duties consisted of "making in-home visits to obtain participants' answers to standardized medical questionnaires, inputting data from those questionnaires, . . . and collecting medical authorizations." (*See e.g.,* docs. 30-10, 30-11, 30-12, 30-13, 30-14, 30-15.) She also moves for authorization to provide written notice of the action to potential plaintiffs. (doc. 30 at 10.)

## II. CONDITIONAL CERTIFICATION AND NOTICE

The FLSA provides that a suit may be instituted by "one or more employees for and in behalf of himself or themselves and other employees similarly situated" to recover unpaid minimum wages, overtime compensation, and liquidated damages from employers who violate the statute's provisions. 29 U.S.C. § 216(b). This type of collective action follows an "opt-in" procedure in

---

[3] Opt-in Plaintiffs include LaCita Rone, Sherry Craig, Debra Jules, Blanchie Hobbs, Marshae Davis, Zena Ali, Ashlee Marshall, Christine Pokluda, Michalia Hall, Tara Odems, Christi Richardson, Stephany Morgan, and Jessica Ortiz. (docs. 3, 8, 9, 21, 27, 37, 44, 45, 46, 47.)

[4] Plaintiff filed an amendment to her motion for conditional certification that sought extension of the class to include all "Field Service Coordinators who did not possess Registered Nurse (RN) credentials" as well as two supplements to her appendix in support. (*See* docs. 36, 38, 52.) Because she failed to seek leave to amend or supplement her initial motion, the documents were unfiled. (*See* doc. 53.)

which "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."[5]  *Id.*

Under the FLSA, courts have discretion to allow a party asserting claims on behalf of others to notify potential plaintiffs that they may choose to "opt-in" to the suit. *See Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989).  Although the Fifth Circuit has not adopted a specific standard to be used in determining the propriety of class certification under the FLSA, courts in this district utilize a two-stage approach that involves a "notice" stage and a "decertification" stage with different evidentiary thresholds applying at each. *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003); *Valcho v. Dallas Cnty. Hosp. Dist.*, 574 F. Supp. 2d 618, 621 (N.D. Tex. 2008) (noting that district courts in the Northern District of Texas apply the two-stage test).[6]

At the "notice" stage under the two-step approach, a plaintiff files a motion to authorize notice of the lawsuit to potential class members. *Mooney*, 54 F.3d at 1213-14. The evidentiary standard at this stage is lenient, requiring "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan . . . ." *Id.* at 1214 n. 8. However, a court should be mindful of the "responsibility to avoid the 'stirring up' of litigation through unwarranted solicitation." *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 266-67 (D.

---

[5] Section 216(b) actions differ from Fed. R. Civ. P. 23 class actions in that members of the class are permitted to "opt-in" rather than "opt-out" of the class. *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1212 (5th Cir. 1995). Rule 23 and § 216(b) class actions are "mutually exclusive and irreconcilable," and those who choose not to opt-in to a class action under § 216(b) are not bound by, and may not benefit from, the judgment. *LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 288-89 (5th Cir. 1975) (per curiam).

[6] Although *Mooney* addressed the collective action procedure under the Age Discrimination in Employment Act (ADEA), it applies in the FLSA context because the ADEA explicitly incorporates 29 U.S.C. § 216(b). *Villatoro v. Kim Son Restaurant, L.P.*, 286 F. Supp.2d 807, 809 n. 7 (S.D. Tex. 2003).

Minn. 1991). If the motion is granted, the district court will conditionally certify the class so that putative class members are given notice and the opportunity to "opt-in" to the lawsuit. *Mooney*, 54 F.3d at 1214. The action then proceeds as a representative action throughout discovery. *Id*. Once discovery is complete, the case proceeds to the second stage of litigation, in which the court revisits the issue of certification, usually when the defendant files a motion to decertify the class. *Id*.

Citing *Basco v. Wal-Mart Stores*, *Inc*., No. 00-3184, 2004 WL 1497709 (E.D. La. July 1, 2004), Defendants argue that utilizing the two-step approach would cause "disastrous and costly results," and "a more stringent standard" should be utilized instead. (doc. 39 at 23-24.) The *Basco* court found that "the criteria for both the first and second steps" should be considered at the initial stage because "substantial discovery" had already occurred. 2004 WL 1497709 at *4. Substantial discovery has not yet occurred in this action, and both parties primarily submitted declarations to support their positions. (*See* docs. 30, 39.) Accordingly, Plaintiff will not be held to a more stringent standard at the initial notice stage. *See In re Wells Fargo Wage & Hour Emp't Practices Litig. (No. III)*, No. H-11-2266, 2012 WL 3308880 at *20 (S.D. Tex. Aug. 10, 2012) (finding that it is "only appropriate to increase the plaintiffs' burden [at the conditional certification notice stage] after discovery is largely complete and the matter is ready for trial.") (internal citations omitted).

**A.    Similarly Situated**

Plaintiff contends that the pleadings and declarations submitted demonstrate that a class of similarly situated potential plaintiffs exists, and that conditional certification and notice to putative class members is proper. (doc. 30 at 3-4.) Defendants contend that she has not met her burden to show that she and potential class members are similarly situated because the putative class members have variations in job duties, there is no common illegal policy, and individualized analysis of each

4

plaintiff is required. (doc. 39 at 25-29.)

> To demonstrate that conditional certification and notice to potential plaintiffs is proper, a plaintiff must make a minimal showing that (1) there is a reasonable basis for crediting the assertions that aggrieved individuals exist, (2) [ ] those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted, and (3) [ ] those individuals want to opt in to the lawsuit.

*Prater v. Commerce Equities Mgmt. Co., Inc.*, No. H-07-2349, 2007 WL 4146714 *4 (S.D. Tex. Nov. 19, 2007) (citing *Haynes v. Singer Co., Inc.*, 696 F.2d 884, 887 (11th Cir. 1983). To determine whether the requisite showing has been made, courts look to the similarity of job requirements and pay provisions and at whether the putative class members appear to be possible victims of a common policy or plan. *See Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d 234, 238 (N.D.N.Y. 2002); *Butler v. City of San Antonio*, 2003 WL 22097250 at *1 (W.D. Tex. Aug. 21, 2003). Courts may also consider whether potential plaintiffs were identified, whether affidavits of potential plaintiffs were submitted, and whether evidence of a widespread discriminatory plan was submitted. *See H & R Block, Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999). At the notice stage, "allegations in pleadings and affidavits are generally sufficient to support a claim for conditional certification" and to allow notice of the lawsuit to potential opt-in plaintiffs. *Pacheo v. Aldeeb*, No. 5:14-CV-121, 2015 WL 1509570 at *3 (W.D. Tex. Mar. 31, 2015). Affidavits may contain knowledge "based upon [employees'] own observations [of other employees] and experiences during their employment." *Lee v. Metrocare Servs.*, 980 F. Supp. 2d 754, 764 (N.D. Tex. 2013) (citing *U.S. v. Cantu*, 167 F.3d 198, 204 (5th Cir. 1999)). The affidavits and allegations need not be in a form admissible at trial and may be based upon reasonable personal observations or "couched in general terms." *Dyson v. Stuart Petroleum Testers, Inc.*, 308 F.R.D. 510, 514 (W.D. Tex. 2015); *see also Villegas v. Grace Disposal Sys., LLC*, No. H-13-320, 2014 WL 793977 at *5 (S.D. Tex.

Feb. 27, 2014). Because only minimal evidence is required, a court makes its determination using a fairly lenient standard and usually grants conditional certification. *Mooney*, 54 F.3d at 1213-14; *Black v. Settlepou, P.C.*, No. 3:10-CV-1418, 2011 WL 609884 at *3 (N.D. Tex. Feb. 14, 2011); *Allen v. McWane, Inc.*, No. 2:06-CV-158, 2006 WL 3246531 at *2 (E.D. Tex. Nov. 7, 2006).

Here, Plaintiff alleges that she and the potential opt-in plaintiffs "are victims of the same scheme to deprive them of overtime compensation." (doc. 30 at 9.) She provides job descriptions, job offer letters from Defendants, and declarations from early opt-in plaintiffs attesting to similarities in job duties and pay practices for Level 2 Service Coordinators. (*See e.g.,* docs. 30 at 8, 30-7, 30-8, 30-9, 30-10, 30-11, 30-15.) The job descriptions and job offer letters explain that all Level 2 Service Coordinators must meet the same qualifications and were paid primarily on a salaried basis without overtime pay. (*See* docs. 30-4, 30-5, 30-6, 30-7, 30-8.) The declarations state that their primary job duties consisted of "making in-home visits to obtain participants' answers to standardized medical questionnaires, inputting data from those questionnaires, . . . and collecting medical authorizations." (*See e.g.,* docs. 30-10, 30-11, 30-12.) They also state that their jobs as Level 2 Service Coordinators required them to "work more than 40 hours a week on a regular basis due to Defendants' chronic understaffing and excessive work demands" and that they were misclassified as exempt under the FLSA from receiving overtime pay. (*See id.*) They maintain that the Level 2 Service Coordinators at Defendants' other locations "performed similar job duties and under similar pay provisions," and they gained personal knowledge of this by "speaking with [their] co-workers and watching them work" and from attending a "Field Coordinator training session in Austin along with Field Coordinators from throughout Texas [where] Defendants' agents told [them] that this position required overtime hours . . . regardless of the location where Level 2 Coordinators

worked." (*See id.*) These declarations also identified potential plaintiffs by name who have not joined the action but would like to. (doc. 30-15.) Since the filing of this action, thirteen additional putative class members have opted-in to this action. (docs. 3, 8, 9, 21, 27, 37, 44, 45, 46, 47.)

### 1.     *Diverse job duties*

Defendants argue that conditional certification of Level 2 Service Coordinators is improper because they are not "similarly situated" in that they have diverse job duties. (doc. 39 at 7, 25.) They explain that even though these Service Coordinators all have the same general duty "to coordinate service for the needs of health plan members through collaboration with medical, behavioral, and social support staff," their "day-to-day duties" and how they carry out their responsibilities varies due to different product lines, service areas, member population, education level, and preferences of their supervisors. (*Id.* at 11, 18.)

The duties of the potential class members need not be identical, only similar. *See Black*, 2011 WL 609884 at *4; *Ryan v. Staff Care, Inc.*, 497 F. Supp. 2d 820, 824 (N.D. Tex. 2007). Both Plaintiff and Defendants agree that all Service Coordinators share a general duty to "manage member screening and risk assessment interventions, coordinate member care, educate providers and community resources on program services and develop and modify service plans." (doc. 39 at 11.) It is improper at the initial notice stage to extend the analysis and "perform a detailed review of individualized facts from employees hand-picked [by Defendants]." *Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 840 (N.D. Ohio 2011); *see also Crain v. Helmerich & Payne Int'l Drilling Co.*, No. 92-0043, 1992 WL 91946 at *3 (E.D. La. Apr. 16, 1992) ("But what matters is that the fundamental allegation that according to company policy the time spent in job related meetings and training was uncompensated is common to all the [FLSA] plaintiffs and dominates each of their

7

claims."). Plaintiff has met her lenient burden of providing sufficient evidence that she is similarly situated to the intended notice recipients. *Mooney*, 54 F.3d at 1213-14.

Defendants also argue that conditional certification should be denied because Plaintiff's motion is "noticeably devoid of any evidence with respect to any Service Coordinator outside of 4 of the 7 offices and 10 of the 14 [service areas]." (doc. 39 at 25.) They provided controverting declarations[7] from other Level 2 Service Coordinators stating that it is not possible for Plaintiff and the other opt-in plaintiffs to have personal knowledge regarding the job duties of other Service Coordinators working in different areas. (*See* doc. 40-2.)

Declarations and affidavits at this stage may be general. *See McCloud v. McClinton Energy Group, LLC*, No. 7:14-CV-120, 2015 WL 737024 at *4 n. 5 (W.D. Tex. Feb. 20, 2015) (collecting cases) (finding "interaction with fellow employees can be sufficient to establish personal knowledge" at this stage of the litigation). One opt-in plaintiff's declaration states that:

> [She is] aware that Defendants paid these Level 2 Coordinators a salary and did not pay [them] overtime pay for overtime work [, and she] gained this knowledge when [she] attended a Field Coordinator training session in Corpus Christi along with Field Coordinators from San Antonio, Dallas, Lubbock, Hidalgo, and Corpus Christi [where she learned that] this position was a salaried position, regardless of the location where Level 2 Coordinators worked. (doc. 30-10 at 3.)

This is sufficient for Plaintiff to meet her lenient burden of providing sufficient evidence that she is similarly situated to the intended notice recipients. *Mooney*, 54 F.3d at 1213-14; *see also Huaman v. Ojos Locos Sports Cantina LLC*, No. 3:13-CV-4938-B, 2014 WL 4081554 at *5 (N.D. Tex. Aug. 19, 2014) (rejecting argument that conditional certification should be denied when controverting

---

[7] Plaintiff's reply objects to the use of these declarations because she characterizes them as "depositions of current employees who were neither disclosed to Plaintiff nor offered for cross-examination." (doc. 48 at 7.) Her objection is overruled. *See Lee v. Metrocare Servs.*, 980 F. Supp. 2d 754, 762 (N.D. Tex. 2013) (explaining that declarations must be based on personal knowledge and are not subject to cross-examination).

8

declarations from other potential class members were submitted by defendant).

### 2. *Common Illegal Policy*

Defendants also argue that conditional certification is improper because there is no common illegal policy, decision, or plan that violates the FLSA. (doc. 39 at 26-27.)

A unified plan, policy or scheme need not be proved at the initial notice stage; rather, the existence of a plan or policy is probative evidence that similarly situated plaintiffs exist. *Black*, 2011 WL 609844 at *4 (citing *Grayson v. K-Mart Corp.*, 79 F.3d 1086, 1095 (11th Cir. 1996)); *H&R Block, Ltd.*, 186 F.R.D. at 400 ("Courts who have faced the question of whether movants established substantial allegations [that they were similarly situated] have considered factors such as . . . whether evidence of a widespread discriminatory plan was submitted."). Plaintiff alleges that Defendants designated the Level 2 Service Coordinators as a "Clinical and Nursing" position, uniformly classified the position as exempt under the FLSA regardless of the actual job responsibilities, required these Service Coordinators to work primarily on non-exempt types of work, and then failed to pay overtime wages for hours worked over 40 hours per week in accordance with the FLSA. (doc. 30 at 2.) She provides statements from Defendants and declarations from opt-in plaintiffs to show the existence of this common scheme imposed on all Level 2 Service Coordinators. (*See e.g.,* docs. 30-4, 30-5, 30-6, 30-11, 30-15.) She has met her low burden to introduce evidence that sufficiently suggests that a policy may have been in place. *See Patton v. Thomson Corp.*, 364 F. Supp. 2d 263, 267 (E.D.N.Y. 2005) (finding the existence of a common scheme during the notice stage of conditional certification when a plaintiff alleged that she did not receive overtime pay because she was improperly classified as exempt and submitted evidence to show that defendant "applies the same classification to all [] employees and pays them in the same

9

manner pursuant to the same policies").

### 3. *Individualized analysis*

Defendants' final argument is that conditional certification should be denied because these FLSA claims require individualized analysis where "the principal question . . . is whether Defendants can prove Level 2 Service Coordinators perform job duties that exempt them from the overtime pay requirements of the FLSA." (doc. 39 at 7, 27-29.) They are effectively asking for an analysis of the underlying merits and consideration of the potential defenses of the FLSA claims. It is improper for a court to make such a determination at the notice stage. *See Lee*, 980 F. Supp. 2d at 767-68; *Heeg v. Adams Harris, Inc.*, 907 F. Supp. 2d 856, 861 (S.D. Tex. 2012); *McKnight v. D. Hous., Inc.*, 756 F. Supp. 2d 794, 802 (S.D. Tex. 2010). As such, the "alleged need for individualized assessments is not a sufficient reason to deny conditional certification" in the circumstances of this case. *Behnken v. Luminant Min. Co., LLC*, 997 F. Supp. 2d 511, 520 (N.D. Tex. 2014).

Accordingly, the Court conditionally certifies a class of all current and former Field Service Coordinators (who were categorized, known, or identified specifically as Level 2, Level II, LPN, LVN, or LCSW Field Service Coordinators) who worked for Defendants in the state of Texas from April 2013 to the present and were paid primarily on a salaried basis. *See Krueger v. New York Tel. Co.*, No. 93-Civ.-0178, 1993 WL 276058 at *2 (S.D.N.Y. July 21, 1992) ("[E]ven if plaintiffs' claims turn out to be meritless or, in fact, all the plaintiffs turn out *not* to be similarly situated, notification at this stage, rather than after further discovery, may enable more efficient resolution of the underlying issues in the case."). After the potential opt-in plaintiffs have filed their notices of consent, any motion filed by Defendants to decertify the class will be considered.

**B.      Notice and Consent**

Plaintiff seeks approval of a proposed notice and consent form for potential class members. (docs. 30 at 10, 30-1, 30-2.) Defendants contend that "any argument regarding the terms of such notice should be moot and are certainly premature."[8] (doc. 39 at 30.) They also allege that she is "circumvent[ing] the court facilitated notice process" by providing notice of this action to potential plaintiffs before conditional certification. (*Id.* at 29.)

Because conditional certification is proper in this action, judicial approval of the form, content, and delivery method for a collective action notice is appropriate. *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 171 (1989). Courts have a duty to oversee the notice process to "ensure that it is timely, accurate, and informative." *Id*. at 172. Defendants fail to cite to any authority for their argument that it is "premature" (doc. 39 at 25) for a determination regarding the terms of the notice, and, in fact, courts in this district regularly order conditional certification and the terms of notice at the same time without additional briefing. *See e.g., Fulton v. Bayou Well Servs. LLC*, No. 3:16-CV-00474-N, 2016 WL 5377903 at *3 (N.D. Tex. Sept. 21, 2016); *Williams v. Rowell Invs., Inc.*, No. 3:14-CV-1469-P, 2015 WL 12533010 at *2 (N.D. Tex. May 15, 2015); *Altiep v. Food Safety Net Servs., Ltd.*, No. 3:14-CV-00642-K, 2014 WL 4081213 at *5 (N.D. Tex. Aug. 18, 2014). To the extent that Defendants argue that Plaintiff has already issued a *de facto* notice by contacting other potential plaintiffs, they "cannot establish that all potential similarly-situated employees are already aware of the notice . . . , so there may be employees who wish to opt-in who have not yet been notified by any means." *Behnken*, 997 F. Supp. 2d at 523.

Plaintiff proposes to send notice to potential opt-in plaintiffs by U.S. mail and/or e-mail, and

---

[8] Defendants claim that they "reserve the right to file objections to Plaintiff's proposed notice" but fail to provide any authority that grants them additional time or leave to file objections to Plaintiff's motion. (doc. 39 at 30.)

consent forms would be due 60 days after the initial mailing. (doc. 30 at 10.) The proposed notice advises putative class members of the pending litigation, describes the basis of Plaintiff's claims, informs class members of the right to opt-in and that participation in the suit is voluntary, and provides instructions on how to opt-in. (*See* doc. 30-1.) It also advises putative class members that retaliation and/or discrimination for participation in an FLSA action is prohibited. (*Id.*) The proposed consent form clearly states that the opt-in plaintiff is consenting to become a party plaintiff and is designating Plaintiff and her attorneys to be his or her representatives in the instant case. (*See* doc. 30-2.) It also advises that this consent may be used in this case or in any subsequent case as necessary. (*Id.*) Both the notice and consent form are therefore timely, accurate, and informative.

The proposed notice and consent form are approved by the Court, as are Plaintiff's request to provide notice to the conditionally certified class in the manner described above. *See Sarmiento-Perez v. Las Colinas Int'l, Inc.*, No. 3:14-CV-1898-L, 2015 WL 3539571 at *4 (N.D. Tex. June 5, 2015) (authorizing proposed notice when defendant failed to file any objections because "the general rule is that absent reasonable objections to plaintiff['s] proposed class notice, the plaintiff [ ] should be allowed to use the language of [his] choice in drafting the notice") (internal citations omitted).

### III.  CONTACT INFORMATION

To facilitate collective adjudication of the case, Plaintiff moves for entry of an order compelling Defendants to provide Plaintiff's counsel with the names, last known addresses, phone numbers, and e-mail addresses for all putative class members. (doc. 30 at 10.)

The United States Supreme Court has found that discovery of contact information for potential class members for purposes of notice in an FLSA case is proper:

> The District Court was correct to permit discovery of the names and addresses of the . . . employees. Without pausing to explore alternative bases for the discovery, for instance that the employees might have knowledge of other discoverable matter, we find it suffices to say that the discovery was relevant to the subject matter of the action and that there were no grounds to limit the discovery . . . .

*Sperling,* 493 U.S. at 170. Since *Sperling*, courts have routinely granted discovery of identity and contact information, including e-mail addresses, for putative plaintiffs once a request for conditional certification has been granted. *See Clarke v. Convergys Customer Management Group, Inc.*, 370 F. Supp. 2d 601, 607 (S.D. Tex. 2005); *Black*, 2011 WL 609884 at *3; *Eggelston v. Sawyer Sportsbar, Inc.*, No. 4:09-3529, 2010 WL 2639897 at *4 (S.D. Tex. June 28, 2010).

Here, conditional certification has been found to be appropriate. Discovery of the names and contact information of potential plaintiffs is therefore proper. *See Sperling*, 493 U.S. at 170.

### IV.  CONCLUSION

Plaintiff's motion for notice to potential plaintiffs and conditional certification is **GRANTED**. Defendants shall provide Plaintiff with a list of the names, last known mailing addresses, phone numbers, and e-mail addresses of all current and former Field Service Coordinators (who were categorized, known, or identified specifically as Level 2, Level II, LPN, LVN, or LCSW Field Service Coordinators) who worked for Defendants in the state of Texas from April 2013 to the present and were paid primarily on a salaried basis in a computer readable format within 14 days from the date of the order. The notice and consent form provided to potential class members should conform to Plaintiff's proposed notice and consent form. (*See* docs. 30-1, 30-2). Potential plaintiffs should be given notice of the lawsuit and their right to opt-in via first class mail or e-mail, and they may submit their consent forms no later than 60 days after the initial mailing.

**SO ORDERED on this 7th day of November, 2016**.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

14